## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| TAMARA SKUBE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.  12-3185 |
| | ) | |
| NEIL WILLIAMSON, Sheriff, Sangamon | ) | |
| County, Illinois, Solely in his Official Capacity, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This cause is before the Court on the Motion to Dismiss Plaintiff's Complaint Pursuant to 12(b)(6) and 12(f) (Motion) (d/e 9) filed by Defendants Sheriff Neil Williamson, Captain Joseph Roesch, Deputy Travis Dalby, and Deputy Travis Koester.

In July 2012, Plaintiff filed a Complaint against Defendants.  The Complaint asserted, pursuant to 42 U.S.C. § 1983, claims of excessive force.  Defendants have filed the instant Motion.  The Motion is denied.

## I. FACTS

Plaintiff's July 2012 Complaint stems from an incident that occurred on July

21, 2011, during which Deputy Koester shot Plaintiff twice with a Taser. Plaintiff has brought her two-count Complaint pursuant to 42 U.S.C. § 1983 and alleges the following.

On July 21, 2011, Plaintiff was a passenger in a vehicle driven by Cliffton Flagg. At approximately 11:41 p.m. that night, Deputy Travis Koester of the Sangamon County Sheriff's Department stopped Flagg for making an improper turn. During the stop, Deputy Koester asked Flagg to perform field sobriety tests. Flagg refused. During the arrest of Flagg, Deputy Koester drew his Taser and had another officer handcuff Flagg while Deputy Koester pointed his Taser at Flagg. The officer then placed Flagg in Deputy Koester's squad car.

Deputy Koester then approached the passenger side of Flagg's vehicle and asked Plaintiff for her identification. Deputy Koester informed Plaintiff that she needed to make arrangements to get home and told her to stand next to the other officer, who was near Deputy Koester's squad car. While Plaintiff stood near Deputy Koester's squad car, and after Deputy Koester told Plaintiff she was free to leave, Koester started to search Plaintiff's purse that Plaintiff had left in Flagg's vehicle. Plaintiff ran toward Deputy Koester and told him he had no right to search her purse. Deputy Koester said he was not searching Plaintiff's purse, rather he was inventorying it. Deputy Koester told Plaintiff she was not under arrest and

free to leave.

Deputy Koester drew his Taser as Plaintiff approached.  Deputy Koester told Plaintiff she was under arrest for resisting a police officer and ordered her to turn around and place her hands behind her back.  Plaintiff again informed Deputy Koester that he could not search her purse.  Deputy Koester responded that Plaintiff would be Tased if she did not obey his lawful commands.  Deputy Koester then Tased Plaintiff.  At the time Deputy Koester Tased Plaintiff, Plaintiff's hands were at her side, her palms were open, and she was stepping away from Deputy Koester.

As Plaintiff lay on the ground, Deputy Koester told Plaintiff to turn over and put her hands behind her back.  Deputy Koester gave Plaintiff no more than three seconds to comply before he Tased Plaintiff again.  Plaintiff was then taken into custody.

The general allegations of the Complaint included references to and quotations from both the 2011 Electronic Control Weapon Guidelines (Guidelines) and the Sangamon County Sheriff's Taser Policy and Procedures (Sheriff's Procedures), which Plaintiff has attached to the Complaint as Exhibits 2 and 4, respectively.  The Complaint alleges that the Sheriff's Procedures require any discharge of a Taser to be investigated and documented by the Shift Supervisor and forwarded to the Division Commander.  Therefore, Captain Roesch should have

known of Koester's illegal, improper, and unwarranted Taser shootings by Deputy Koester from 2006 to the present.  At no point, since July 2005, have Sheriff Williamson, Captain Roesch, Deputy Dalby, or any other Sangamon County Sheriff's Office employee, disciplined or removed Deputy Koester from duty for these Taser shootings.  According to the Complaint, this leads to the conclusion that "the Sangamon County Sheriff's Office has adopted an unwritten custom and practice of shooting their Tasers at individuals who offer no physical threat to a deputy/officer in order to gain compliance for verbal commands."  Moreover, the Complaint alleges that these practices were known or should have been known by Defendants.

The Complaint contains two Counts.  Count I is brought against Deputy Koester in both his individual and official capacity, and against all remaining Defendants in their official capacities.  Count I alleges Deputy Koester's first deployment of the Taser against Plaintiff was unreasonable and constituted the excessive use of force.  This Count also alleges there was an established pattern and practice whereby Deputy Koester had Tased numerous nonviolent individuals for failing to fully comply with verbal commands and that this pattern and practice led to the violation of Plaintiff's constitutional rights.

Count II is likewise brought against Deputy Koester in both his individual and official capacity and against all remaining Defendants in their official

capacities.  Count II alleges Deputy Koester's second deployment of the Taser

against Plaintiff was unreasonable and constituted the excessive use of force.  This

Count also alleges that "[i]n training Deputy Koester to shoot numerous

individuals who were unable to understand commands or nonviolent and compliant

after initially being Tased, Sheriff Williamson, Captain Roesch, Deputy Dalby, and

Deputy Koester recklessly disregarded [Plaintiff's] constitutional rights."

## II. JURISDICTION AND VENUE

Because Plaintiff brought a civil rights action pursuant to 42 U.S.C. §1983,

this Court has jurisdiction over those claims pursuant to 28 U.S.C. § 1331.  See 28

U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil

actions arising under the Constitution, laws, or treaties of the United States").

Venue is proper because the events giving rise to the claim occurred in Springfield,

Illinois.  See 28 U.S.C. § 1391(b) (a civil action where jurisdiction is not founded

solely on diversity of citizenship may be brought in a judicial district where a

substantial part of the events or omissions giving rise to the claim occurred).

## III. LEGAL STANDARD

Defendants have brought the Motion to Dismiss pursuant to Federal Rules of

Civil Procedure 12(b)(6) and 12(f).

A. Legal Standard for Motion to Dismiss Pursuant to 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) permits

dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).  For purposes of the motion, this Court must accept as true all well-pleaded allegations contained in the complaint and draw all inferences in the light most favorable to the non-moving party.  Estate of Davis v. Wells Fargo Bank, 633 F.3d 529, 533 (7th Cir. 2011).

To avoid dismissal for failure to state a claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a).  That statement must be sufficient to provide the defendant with "fair notice" of the claim and its basis.  Tamayo v. Blagojevich, 526 F.3d 1074, 1083 (7th Cir. 2008); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  This means that (1) "the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests" and (2) its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level." EEOC v. Concentra Health Services, Inc., 496 F.3d 773, 776 (7th Cir. 2007).

B.  Legal Standard for Motion to Strike Pursuant to Rule 12(f)

Rule 12(f) provides that "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f).  As a general rule, motions to strike are disfavored because such motions often serve only to delay proceedings.  See Heller Financial, Inc. v.

Midwhey Powder Co., Inc., 883 F.2d 1286, 1294 (7th Cir. 1989) (citing United

States v. 416.81 Acres of Land, 514 F.2d 627, 631 (7th Cir. 1975)).  "Motions to

strike under Federal Rule 12(f) are not favored [ ] and are usually denied unless the

language in the pleading has no possible relation to the controversy and is clearly

prejudicial."  Tektel, Inc. v. Maier, 813 F.Supp. 1331, 1334 (N.D. Ill. 1992).

However, if a motion to strike removes unnecessary clutter from the case, the

motion can serve to expedite, not delay.  See Heller Financial, Inc., 883 F.2d at

1294.

## IV. ANALYSIS

In their Motion and supporting memorandum Defendants maintain that

Plaintiff's Complaint is deficient in several ways.  Specifically, Defendants allege

that: (1) the allegations in Plaintiff's Complaint are not concise and direct and

therefore the Complaint fails to comply with Federal Rule of Civil Procedure

8(d)(1); (2) Plaintiff has improperly combined the individual claims against

Deputy Koester with the official capacity claims against all other parties; (3)

Plaintiff improperly designates two counts to address the arrest of the Plaintiff and

fails to identify any counts to identify the separate claim against the officers in

their official capacities; and (4) the Complaint contains immaterial, redundant, and

irrelevant material that should be stricken.

A.  Plaintiff Did Not Violate Rule 8(d)(1)

Rule 8(d)(1) states that "[e]ach allegation must be simple, concise, and direct" and that "[n]o technical form is required."  Defendants' Motion contends that Plaintiff has violated Rule 8(d)(1) because "Plaintiff's Complaint sets forth several pages of allegations which are not concise and direct and many of the allegations do not allege facts."  However, Defendants do further develop this argument.  Moreover, the allegations in Plaintiff's Complaint put Defendants on notice of the claims against them.  The Complaint gives the factual background of the incident at issue, the legal basis for each count, the allegations relied on by each count, the extent to which each count incorporates allegations from other portions of the Complaint, the relief sought, and which Defendants are being sued in each count.  See Zoch v. City of Chicago, 1997 WL 89231, at *17 (N.D. Ill. 1997).

B.    The Complaint Will Not Be Dismissed Based On Rule 10(b)

Next, Defendants argue that Plaintiff's Complaint incorrectly combines the claims against Deputy Koester with the official capacity claims against all other Defendants.  Defendants also contend that the Complaint improperly "attempts to create two causes of action based on a single set of circumstances," *i.e.*, contains two separate counts based upon the number of times Deputy Koester deployed the Taser.  According to Defendants, this violates Federal Rule of Civil Procedure 10(b), which states:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence--and each defense other than a denial--must be stated in a separate count or defense.

Moreover, "a violation of Rule 10(b) in an of itself does not provide a legal basis for dismissing a complaint." Zoch, 1997 WL 89231, at *18.

The language in Rule 10(b) requires that claims based on separate transactions or occurrences be set forth in separate counts. Counts I and II are based on each respective deployment of the Taser during the incident at issue. While Defendants are correct that claims of excessive force require an examination of the totality of the circumstances (Cyrus v. Town of Mukwongo, 624 F.3d 856, 861 (7th Cir. 2010)), Defendants are not prejudiced by the Complaint containing one Count for each deployment of the Taser. Defendants are on notice that Plaintiff claims Deputy Koester used excessive force when Deputy Koester used the Taser on Plaintiff twice during this incident.

Defendants also allege that Plaintiff violated Rule 10(b) because she did not separate her claims against Deputy Koester from her official capacity claims against the other Defendants. While the Complaint may have been clearer if Plaintiff had separated the official capacity claims against the other Defendants from the claims against Deputy Koester, the Court concludes dismissal under Rule 10(b) is not necessary and would only serve to further delay this case. The

allegations in the Complaint make clear that Plaintiff is alleging that each

deployment of the Taser constituted an excessive use of force and that Plaintiff's

claims against Sheriff Williamson, Captain Roesch, and Deputy Dalby in their

official capacities are based on an alleged unconstitutional official policy or

custom.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  The Monell

claims are based on the allegation the Sheriff's Department has an unwritten

policy, custom, or practice of allowing their deputies to shoot their Tasers at

individuals who offer no physical threat in order to gain compliance with a verbal

order and the failure to train officers not to use Tasers in those circumstances.

C.     The Court Will Not Strike References to the Guidelines or the Sheriff's
       Procedures from the Complaint.

       Defendants assert the allegations in the Complaint "relating to in-house

polices or policies outside the department" should be stricken pursuant to Rule

12(f).  Specifically, Defendants complain that the references to the 2011 Electronic

Control Weapon Guidelines and the Sangamon County Sheriff's Taser Policy and

Procedures should be stricken from the Complaint.  Defendants contend that the

evidence concerning these policies is not admissible at trial and therefore the

answers to the allegations are immaterial.  Defendants also maintain these

allegations prejudice them as "Defendants cannot deny statements that are made in

documents which are immaterial if they in fact contain the statements therein."

Finally, Defendants maintain that "striking these portions of the Complaint will expedite the matter and the preparation of the answer to the Complaint."

Defendants are correct that the Seventh Circuit has stated that "the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established." See Thompson v. City of Chicago, 472 F.3d 444 (7th Cir. 2006).  However, while the Guidelines and Sheriff's Procedures may be inadmissible to show a constitutional violation has been established, that does not necessarily mean that information contained in these documents is irrelevant or inadmissible for other purposes. Further, the admissibility of these documents should be addressed at a later stage. Defendants are not unduly burdened by responding to the portions of the Complaint that reference these documents.  For these reasons, Defendants cannot show  prejudice.  Therefore, Defendants' request to strike references to the Guidelines and the Sheriff's Procedures is denied.

## V. CONCLUSION

For the reasons stated, Defendants' Motion (d/e 9) is DENIED.  This matter is referred back to Judge Cudmore for further pre-trial proceedings.

ENTER: March 12, 2013

FOR THE COURT:

        s/Sue E. Myerscough

        SUE E. MYERSCOUGH

UNITED STATES DISTRICT JUDGE