**E-FILED**
Friday, 17 October, 2014 11:37:45 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
(SPRINGFIELD DIVISION)

| | | |
|---|---|---|
| TAMARA SKUBE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | No. 12-3185 |
| NEIL M. WILLIAMSON, AS SHERIFF | ) | |
| OF SANGAMON COUNTY, SOLELY | ) | |
| IN HIS OFFICIAL CAPACITY; | ) | |
| | ) | |
| | ) | |
| DEPUTY TRAVIS KOESTER | ) | |
| IN HIS INDIVIDUAL AND | ) | |
| OFFICIAL CAPACITIES at the Sangamon | ) | |
| County Sheriff's Office; | ) | |
| | ) | |
| THE SANGAMON COUNTY SHERIFF'S | ) | |
| OFFICE, and | ) | |
| | ) | |
| SANGAMON COUNTY | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

NOW COMES the Plaintiff, TAMARA SKUBE by and through her attorneys, Noll Law Office, LLC, and for Plaintiff's Response to Defendants' Motion for Partial Summary Judgment states as follows:

**INTRODUCTION**

On July 13, 2012, the Plaintiff filed the instant case pursuant to 42 U.S.C. §1983, alleging various constitutional and common-law tort claims against Defendants arising out of her arrest on July 21, 2011, by Deputy Travis Koester, a Sangamon County Sheriff's Deputy, including his

unreasonable and unwarranted use of his Taser twice during the course of her arrest. d/e 1. On February 28, 2014, the Plaintiff amended her Complaint to allege the following:

(A)Fourth Amendment violation for excessive use of force against Deputy Koester in his official and individual capacities based on the first use of his Taser (Counts I-II);

(B) excessive use of force against Deputy Koester in his official and individual capacities based on the second use of his Taser (Counts III-IV);

(C) Fourth Amendment violation for improper search and seizure against Deputy Koester in his official and individual capacities based on Deputy Koester's search of the Plaintiff's purse on July 21, 2011 (Counts V-VI);

(D) Fourth Amendment violation for arresting Plaintiff without probable cause against Deputy Koester in his official and individual capacities (Counts VII-VIII);

(E) false imprisonment against Deputy Koester in his individual and official capacities (Counts IX-X);

(F) intentional infliction of emotional distress (IIED) against Deputy Koester in his individual and official capacities (Counts XI-XII);

(G) assault and battery against Deputy Koester in his official and individual capacities (Counts XIII-XIV);

(H) supervisor liability against Defendant Sheriff Neil Williamson, the Sangamon County Sheriff, in his official capacity (Count XV); and

(I) an indemnity claim against Sangamon County (Count XVI).

After conducting full and complete discovery, the Plaintiff hereby voluntarily dismisses Counts I, III, V, IX, X, XI, XII, XIV and XV. To the extent that Defendants' Motion for Partial Summary Judgment addresses other counts, they will be discussed below.

As it relates to the remaining claims, Deputy Koester violated clearly established law when he arrested the Plaintiff without probable cause for Resisting/Obstruction. Thus, summary judgment and qualified immunity should be denied and Counts V and VI should be set for jury trial. The first use of the Taser by Deputy Koester was excessive force in violation of clearly established law and the Fourth Amendment. As such, summary judgment and qualified immunity should be denied and Count II should be set for jury trial. Deputy Koester's conduct was willful and wanton and he is not entitled to Tort Immunity on Count IV (Assault and Battery). Count IV should be set for jury trial. Fourth, the Plaintiff is entitled to summary judgment as it relates to the unlawful search of her purse (Count VI). See: d/e 108. Finally, an issue of fact remains as to compensatory damages on the search of her purse on Count VI. Thus, the Defendants' Motion for Summary Judgment should be denied and should be set for jury trial.

## I. <u>RESPONSE TO UNDISPUTED MATERIAL FACTS</u>

### A. UNDISPUTED MATERIAL FACTS

1. Paragraph 1 of the Defendants' Motion for Partial Summary Judgment is material and undisputed.

2. Paragraph 2 of the Defendants' Motion for Partial Summary Judgment is material and undisputed.

3. Paragraph 3 of the Defendants' Motion for Partial Summary Judgment is material and undisputed.

4. Paragraph 5 of the Defendants' Motion for Partial Summary Judgment is material and undisputed.

5. Paragraph 7 of the Defendants' Motion for Partial Summary Judgment is material and undisputed.

6. Paragraph 8 of the Defendants' Motion for Partial Summary Judgment is material and undisputed.

7. Paragraph 9 of the Defendants' Motion for Partial Summary Judgment is material and undisputed.

8. Paragraph 12 of the Defendants' Motion for Partial Summary Judgment is material and undisputed.

9. Paragraph 13 of the Defendants' Motion for Partial Summary Judgment is material and undisputed.

10. Paragraph 14 of the Defendants' Motion for Partial Summary Judgment is material and undisputed.

11. Paragraph 15 of the Defendants' Motion for Partial Summary Judgment is material and undisputed.

12. Paragraph 16 of the Defendants' Motion for Partial Summary Judgment is material and undisputed.

13. Paragraph 17 of the Defendants' Motion for Partial Summary Judgment is material and undisputed.

14. Paragraph 19 of the Defendants' Motion for Partial Summary Judgment is material and undisputed.

15. Paragraph 20 of the Defendants' Motion for Partial Summary Judgment is material and undisputed.

16. Paragraph 21 of the Defendants' Motion for Partial Summary Judgment is material and undisputed.

17. Paragraph 22 of the Defendants' Motion for Partial Summary Judgment is material and undisputed.

18. Paragraph 23 of the Defendants' Motion for Partial Summary Judgment is material and undisputed.

19. Paragraph 26 of the Defendants' Motion for Partial Summary Judgment is material and undisputed.

B. **DISPUTED MATERIAL FACTS**

20. Paragraph 6 of the Defendants' Motion for Partial Summary Judgment is disputed to the extent it implies that Deputy Koester had lawful authority to search the Plaintiff's purse. See: Plaintiff's Motion for Partial Summary Judgment, d/e 108.

21. Paragraph 11 of the Defendants' Motion for Partial Summary Judgment is disputed to the extent that it implies that Deputy Koester had lawful authority to search the Plaintiff's purse. See: Plaintiff's Motion for Partial Summary Judgment, d/e 108.

22. Paragraph 18 of the Defendants' Motion for Partial Summary Judgment is disputed to the extent that it implies that Deputy Koester's "direction," was a valid and/or lawful order. d/e 107, Exhibit E, Plaintiff's Response to Defendants' First Request for Admissions, Nos. 10-11.

23. Paragraph 24 of the Defendants' Motion for Partial Summary Judgment is disputed to the extent that the Plaintiff needed to comply with the orders to turn around as she was free to leave. d/e 107, Exhibit E, Plaintiff's Response to Defendants' First Request for Admissions, Nos. 10-11.

24. Paragraph 25 of the Defendants' Motion for Partial Summary Judgment is disputed to the extent that the Plaintiff "continued to argue" with Deputy Koester. The Plaintiff

was using her First Amendment right to speech and explaining to Deputy Koester that she did not believe that he had a right to search the vehicle or its contents. d/e 1, Exhibit 5, video at 12:10 to 12:20.

25. Paragraph 27 of the Defendants' Motion for Partial Summary Judgment is disputed to the extent that the Deputy Koester's "orders" were lawful. d/e 1, Exhibit 5, Video at 12:10 to 12:20.

C. **UNDISPUTED IMMATERIAL FACTS**

26. Paragraph 4 of the Defendant's Motion for Summary Judgment is undisputed and immaterial to whether Deputy Koester had lawful authority to search the Plaintiff's purse or shoot her twice with his Taser.

27. Paragraph 10 of the Defendant's Motion for Summary Judgment is undisputed and immaterial as the Plaintiff was ordered to exit the vehicle by Deputy Koester and stand by Officer Leggitt. d/e 1, Exhibit 5, video at 11:44.

D. **ADDITIONAL MATERIAL FACTS OF THE CASE**

28. The driver of the vehicle and the initial arrestee, Cliffton Flagg, was held at Taser point by Deputy Koester prior to the Deputy's interaction with Ms. Skube. d/e 1, Exhibit 5, video at 0:00 – 10:00.

29. Deputy Koester was "very concerned" for his own safety because Mr. Flagg was a very large man (6'8", 290 pounds). d/e 73, Defendants' Answer to Plaintiff's Amended Complaint, ¶ 47.

30. Deputy Koester called for backup and Southern View Officer Rachel Leggitt arrived. d/e 1, Exhibit 5, video at 7:30-12:20; Exhibit A, Koester Deposition, pg. 223; d/e 73, Defendants' Answer to Plaintiff's Amended Complaint, ¶ 53.

31. Based upon what Deputy Koester perceived to be "passive resistance" from Mr. Flagg, Deputy Koester had Officer Leggitt place handcuffs on Mr. Flagg while Deputy Koester held him at Taser point. Exhibit B, Jost Deposition, pgs. 139-140, 160; Exhibit A, Koester Deposition, pg. 224.

32. After placing Mr. Flagg in his squad car, Deputy Koester approached the Plaintiff and requested her identification. d/e 1, Exhibit 5, video at 11:35.

33. After providing her identification, Deputy Koester ordered her to leave the vehicle and follow him. d/e 1, Exhibit 5, video at 11:40.

34. Ms. Skube complied with these orders. d/e 1, Exhibit 5, video at 11:40 – 12:06.

35. Deputy Koester did not ask her if she had any property in her vehicle that she wished to obtain. d/e 1, Exhibit 5, video at 11:40-12:06.

36. At no point did Ms. Skube give Deputy Koester permission to search her purse. d/e 1, Exhibit 5, video at 0:00-12:06.

37. After the Plaintiff approached Deputy Koester, she stopped a few feet away from him. d/e 1, Exhibit 5, video at 12:07; Exhibit D, Leggitt Deposition, pg. 75.

38. As Ms. Skube approached Deputy Koester, Officer Leggitt did not consider her a threat and continued on with her conversation with Mr. Flagg. Exhibit D, Leggitt Deposition, pg. 75.

39. Ms. Skube stepped back in compliance with Deputy Koester's direction. Exhibit C, Skube Deposition, pg. 53.

40. As the Plaintiff approached Deputy Koester, Deputy Koester unholstered and pointed his Taser at the Plaintiff. d/e 1, Exhibit 5, video at 12:04.

41. Deputy Koester gave Ms. Skube less than one second to comply with his instructions prior to placing her under arrest. d/e 1, Exhibit 5, video at 12:05-12:06.

42. During this time frame, Deputy Koester spoke with her for approximately 10 - 15 seconds. d/e 1, Exhibit 5, video at 12:04-12:20.

43. At no point prior to being Tased did the Plaintiff verbally or physically threaten Deputy Koester. d/e 1, Exhibit 5, video at 0:00 – 12:20.

44. Ms. Skube did not show any physical signs of aggression towards Deputy Koester. Exhibit B, Jost Deposition, Exhibit 2, Expert Report, pg. 7.

45. Ms. Skube did not refuse to comply with verbal commands. However, she was slow to comply. Exhibit B, Jost Deposition, Exhibit 2, Expert Report, pg. 7; Exhibit B, Jost Deposition, pgs. 154-159.

46. At no point did Ms. Skube attempt to flee and elude arrest. d/e 1, Exhibit 5, video at 0:00 – 12:20; Exhibit A, Koester Deposition, pg. 330.

47. As the Plaintiff was speaking with Deputy Koester, Deputy Koester placed his Taser down as he did not consider Ms. Skube a threat. d/e 1, Exhibit 5, video at 12:07; Exhibit A, Koester Deposition, pg. 221.

48. At the time that Deputy Koester shot the Plaintiff with the Taser, she was backing away from him in compliance with his orders. d/e 1, Exhibit 5, video at 12:14-12:20; Exhibit B, Jost Deposition, Exhibit 2, Expert Report, pg. 7; Exhibit B, Jost Deposition, pgs. 154-159.

49. At the time that Ms. Skube was Tased, there were two officers present. d/e 1, Exhibit 5, video at 7:30-12:20; Exhibit A, Koester Deposition, pg. 223.

50. Deputy Koester did not call for or ask the assistance of Officer Leggitt prior to Tasing Ms. Skube. d/e 1, Exhibit 5, video at 12:00-12:20

51. At the time that Ms. Skube approached Deputy Koester, Cliffton Flagg, the initial arrestee, had been handcuffed, patted down, and placed into the front seat of Deputy Koester's squad car. Exhibit A, Koester Deposition, pg. 234, 238-239.

52. In his deposition, Deputy Koester testified that he factored Cliffton Flagg into his use of force "totality of the circumstances" analysis, when he Tased Ms. Skube. Exhibit A, Koester Deposition, pg. 239.

53. In his deposition, Deputy Koester testified he believed the first Taser use was unsuccessful and, therefore, she may not have incurred full neuromuscular incapacitation. Exhibit A, Koester Deposition, pgs. 307-308.

54. Deputy Koester shot Ms. Skube twice with his Taser. Exhibit A, Koester Deposition, Exhibit #100, Taser Firing Information; Exhibit A, Koester Deposition, Exhibit #3, Taser Use Report.

55. Ms. Skube did not intentionally attempt to defeat the Taser device on the second Tasing by swiping at the wires. Exhibit C, Skube Deposition, pg. 58; Exhibit D, Leggitt Deposition, pg. 77.

56. After the first Tasing and while she was on the ground, Ms. Skube presented no threat to Deputy Koester, Officer Leggitt or anyone else. Exhibit D, Leggitt Deposition, pg. 78.

## II. **ARGUMENT**

### A. **SUMMARY JUDGMENT STANDARD**

According to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is only proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. F.R.C.P. 56(c); *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003). Furthermore, it is the movant's burden to show that no genuine factual dispute

exists, and all reasonable inferences must be drawn in the non-movant's favor. *Giannullo*, 322 F.3d at 140, citing *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 157, 90 S.Ct. 1598 (1970) and *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255, 106 S.Ct. 2505 (1986). Where the movant fails to fulfill its initial burden of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, even if no opposing evidentiary matter is presented. *Giannullo*, 322 F.3d at 140-41 quoting *Adickes*, 398 U.S. at 158, 160, 90 S.Ct. 1598 (internal quotations omitted). The non-movant is not required to rebut an insufficient showing. *Id*.

Because the Defendants have failed to meet their initial burden of showing that no genuine issue of material dispute exists, their motion for summary judgment must be denied. Because Defendants have failed to meet their initial burden, Plaintiff need not present any evidence to the contrary in order for this Court to dismiss Defendants' motion. However, even though Defendant could not satisfy their burden of establishing that no genuine factual dispute exists, Plaintiff has established through the record sufficient facts disputing Defendants' factual allegations. The testimony of the Plaintiff, the Defendants, and the witnesses more than establish that there are genuine issues of disputed material fact in the case at bar.

B. **Deputy Koester Did Not Have Probable Cause to Arrest the Plaintiff for Obstructing/Resisting.**

In Counts VII and VIII, the Plaintiff alleges false arrest against Deputy Koester in his official and individual capacity. d/e 69; pgs. 21-22. In Counts IX and X, Plaintiff alleges that in his individual and official capacities, Deputy Koester falsely imprisoned her. d/e 69, pgs. 23-24. The elements of false arrest and false imprisonment are the same. *See: Meerbrey v. Marshall Field & Co., Inc.*, 564 N.E.2d 1222, 1231 (1990).

Probable cause to arrest is an absolute defense to any §1983 claim for false arrest or false imprisonment. *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). To state a claim for false arrest, a plaintiff must allege that he was restrained without reasonable grounds to believe that he committed an offense. *Meerbrey v. Marshall Field & Co.*, 564 N.E.2d 1222, 1231 (1990). An officer has probable cause to arrest if "the facts and circumstances within the officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a prudent person in believing the suspect has committed or is committing an offense." *United States v. Mounts*, 248 F.3d 712, 715 (7th Cir. 2001).

Qualified immunity protects governmental actors performing discretionary functions to the extent that they are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Chaklos v. Stevens,* 560 F.3d 705, 710 (7th Cir.2009). When confronted with a claim of qualified immunity, a court must ask first the following question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Brosseau v. Haugen*, 543 U.S. 194, 198 (U.S. 2004).

Qualified immunity shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted. *Saucier v. Katz*, 533 U.S. 194, 206 (U.S. 2001). Because the focus is on whether the officer had fair notice that his conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation. *Id*.

Of course, neither the Seventh Circuit nor the district court require a prior case that is precisely on all fours as the facts and law involved here. As the Seventh Circuit has previously stated, "[C]ases involving the exact fact pattern at bar are unnecessary," *Lojuk v. Johnson*, 770 F.2d 619, 628 (7th Cir.1985); see also *Cleveland-Perdue v. Brutsche*, 881 F.2d 427, 431 (7th Cir.1989) ("The presence of a controlling precedent is not ... a *sine qua non* of a finding that a particular right has been clearly established within the meaning of *Harlow*.") (citation omitted). Rather, what is required is a "sufficient consensus," based on all relevant case law, "indicating that the official's conduct was unlawful." *Id*

The existence of probable cause depends, in the first instance, on the elements of the predicate criminal offense(s) as defined by state law. *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). According to Deputy Koester, he believed that he had probable cause to arrest Ms. Skube for obstructing a police officer/resisting arrest.[1] Exhibit A, Koester Deposition, pg. 325. 720 ILCS 5/31-1(a) provides, "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer of any authorized act within his official capacity commits a Class A misdemeanor." Thus, the relevant question is at the time of the arrest whether a reasonable police officer could have believed that Plaintiff had undertaken (or was about to undertake) a physical act which imposed an obstacle that impeded, hindered, interrupted, prevented, or delayed Deputy Koester's performance of his authorized acts. *Abbott v. Sangamon County*, 705 F.3d 706, 722 (7th Cir. 2013).

[1] Deputy Koester also believed he had probable cause to arrest Ms. Skube for Aggravated Assault. Exhibit A, Koester Deposition, pg. 325-326. However, there is a factual dispute as to whether the Plaintiff threw a cigarette at Deputy Koester as she was in the vehicle. Exhibit A, Koester Deposition, pg. 247-248; Exhibit C, Skube Deposition, pg. 81.

Here, Deputy Koester arrested Cliffton Flagg for DUI and placed him in the front seat of his squad car. Deputy Koester testified that at 10:29 on the video (10:34 according to the numbers on the lower right of the video) Ms. Skube was free to leave. Exhibit A, Koester Deposition, pg. 243. Again, Deputy Koester testified that at 11:49 in the video (11:54 according to the numbers on the lower right of the video), she was free to leave. Exhibit A, Koester Deposition, pg. 259.

While Ms. Skube was apparently free to leave, Deputy Koester ordered her to stand next to Officer Leggitt. d/e 1, Exhibit 5, video at 11:44. Deputy Koester proceeded to search through Ms. Skube's purse which was located in the front passenger area of the vehicle. d/e 1, Exhibit 5, video at 11:51. This was the same area that Ms. Skube was ordered to vacate. d/e 1, Exhibit 5, video at 11:51; Exhibit A, Koester Deposition, pg. 260. Deputy Koester was apparently confused about whose purse was in the front passenger seat area that Ms. Skube just left. Exhibit A, Koester Deposition, pg. 265.

Subsequent thereto, Ms. Skube quickly approached Deputy Koester stating, "You have no right to search the vehicle…You have no right to search the car." d/e 1, Exhibit 5, video at 12:03. As Ms. Skube approached Deputy Koester, he quickly stated, "Back up. Back up. Now, you are under arrest." d/e 1, Exhibit 5, video at 12:05-12:06. Ms. Skube was given less than one second to comply with Deputy Koester's verbal instructions. *Id*. As Ms. Skube informed Deputy Koester that he did not have the right to search the vehicle, Deputy Koester informed her that she would be Tased. d/e 1, Exhibit 5, video at 12:06-12:10.

While Section 31-1 does require an individual to comply with a peace officer's authorized actions, it does not call for complete and immediate submission. *People v. McCoy*, 881 N.E.2d 621, 637 (2008). Verbal resistance or arguing with a police officer does not violate

the statute. *Id. at* 630; *Gonzalez v. City of Elgin*, 578 F.3d 526, 538 (7th Cir. 2009) (holding that even profanity directed at a police officer does not constitute resisting a police officer).

The Defendants urge this court to find that Ms. Skube's conduct constituted probable cause because she (1) disregarded his direction to stand by the other officer by vacating that position and approaching him; (2) interfered with his inventory of the vehicle following the arrest of the driver; and (3) failed to comply with his repeated orders to back up, turn around, and place her hands behind her back. d/e 107, Defendants Motion for Partial Summary Judgment, pgs. 9-10. However, the main thrust of their argument items (2) and (3) above, occurred after Deputy Koester arrested Ms. Skube.

Ms. Skube was given conflicting orders to "stand by [Officer Leggitt]" but she was also told that she needed to obtain a ride home. Deputy Koester's testimony directly contradicted what he told Ms. Skube as he stated she was free to leave. Exhibit A, Koester Deposition, pg. 243; Exhibit A, Koester Deposition, pg. 259. Deputy Koester gave Ms. Skube no time to comply with his commands prior to informing her she was under arrest. d/e 1, Exhibit 5, video at 12:05-12:06. When she stopped in front of Deputy Koester, she did back up (pursuant to his commands), but is Tased in the process. d/e 1, Exhibit 5, video at 12:10-12:20; Exhibit C, Skube Deposition, pg. 53.

The analysis of whether police conduct constitutes a seizure requires the court to consider whether (a) there was the threatening presence of several officers; (b) the officer displayed a weapon; (c) the officer physically touched the person; and (d) the officer used words or time to indicate the person might be compelled to comply with his or her request. *People v. Sturgess*, 845 N.E.2d 741, 747 (1st. Dist. 2006), citing *U.S. v. Mendenhall*, 446 U.S. 544 (1980). The essential question to determine if a person has been arrested is whether a reasonable, innocent

person would conclude that he or she was free to leave under the circumstances. *People v. Melock*, 599 N.E.2d 941 (1992).

Using the *Mendenhall* factors to analyze Ms. Skube's approach to Deputy Koester, there were several police officers present (Deputy Koester and Rachel Leggitt), Deputy Koester displayed (and ultimately used) his Taser and stated "Back up. Back up. Now, you are under arrest." However, Deputy Koester's conduct went past a mere seizure when he stated, "you are under arrest." Clearly, a reasonable, innocent person would not feel that they were free to leave under those circumstances.

As such, the Court must look at "the facts and circumstances within the officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a prudent person in believing the suspect has committed or is committing an offense" at the time Deputy Koester informed the Plaintiff that she was under arrest. *United States v. Mounts*, 248 F.3d 712, 715 (7th Cir. 2001). The facts and circumstances within Deputy Koester's knowledge[2] was that Ms. Skube approached him stating "you do not have the right to search the vehicle."

In *Gonzalez v. City of Elgin*, 578 F.3d 526, 538 (7th Cir.2009), the Seventh Circuit held that, without more evidence, there is nothing wrong in itself with approaching a police officer. *Id.* This case, coupled with *People v. McCoy*, 881 N.E.2d 621 (2008), demonstrate that it was clearly established law on July 21, 2011 that Ms. Skube had not committed or was about to

---

[2] The Defendants argue that the Plaintiff's intention was not to speak with Deputy Koester, but to stop him from searching her purse. d/e 107, Defendants' Motion for Partial Summary Judgment, pg. 12. This is irrelevant as there was no way for Deputy Koester to know Ms. Skube's intentions when she approached the vehicle. The only thing this court and Deputy Koester can rely upon for purposes of this Motion are the undisputed material facts as well as what is documented in the video.

commit an offense. It is clear from the video that Deputy Koester overreacted and his conduct was outside the purview of a "prudent person." As such, the Defendants' argument regarding both probable cause as a matter of law and qualified immunity falls short.

C. **Deputy Koester's First Use of the Taser was Unreasonable and He is Not Entitled to Qualified Immunity.**

A claim that an officer employed excessive force in arresting a person is evaluated under the Fourth Amendment's objective-reasonableness standard. *Scott v. Harris,* 550 U.S. 372, 381, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); *Brosseau v. Haugen,* 543 U.S. 194, 197, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam); *Graham v. Connor,* 490 U.S. 386, 388, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Garner,* 471 U.S. at 7–12, 105 S.Ct. 1694. The reasonableness standard is incapable "of precise definition or mechanical application." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865 (quoting *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). It requires courts to 'balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Scott,* 550 U.S. at 383, 127 S.Ct. 1769 (brackets omitted) (quoting *United States v. Place,* 462 U.S. 696, 703, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983)).

In judging the reasonableness of any particular use of force, the Seventh Circuit considers factors such as the severity of the crime, whether the arrestee poses an immediate threat to the safety of the officers or others, and whether he or she is actively resisting arrest or attempting to flee and evade arrest. *Graham,* 490 U.S. at 396, 109 S.Ct. 1865; *Abdullahi v. City of Madison,* 423 F.3d 763, 768 (7th Cir.2005). The reasonableness of the force used depends on the totality of the facts and circumstances known to the officer at the time the force is applied. *Garner,* 471 U.S. at 8–9, 105 S.Ct. 1694; *Phillips v. Cmty. Ins. Corp.,* 678 F.3d 513, 519 (7th Cir.2012). It is

an objective inquiry, the dispositive question being “whether, in light of the facts and circumstances that confronted the officer (and not 20/20 hindsight), the officer behaved in an objectively reasonable manner,” *Padula v. Leimbach,* 656 F.3d 595, 602 (7th Cir.2011) (quoting *McAllister v. Price,* 615 F.3d 877, 881 (7th Cir.2010)), irrespective of the officer's underlying intent or motivation. *See Graham,* 490 U.S. at 397, 109 S.Ct. 1865; *Bell v. Irwin,* 321 F.3d 637, 640 (7th Cir.2003).

The “most important” factor under *Graham* is whether the suspect posed an “immediate threat to the safety of the officers or others.” *Bryan v. Macpherson*, 630 F.3d 805, 826 (9th Cir. 2010). A simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be **objective factors** to justify such a concern. *Id (emphasis added).* Force is reasonable only when exercised in proportion to the threat posed, and as the threat changes, so too should the degree of force. *Abbott v. Sangamon County*, 705 F.3d 706, 729 (7th Cir. 2013). Indeed, it is generally held that it is unreasonable for officers to deploy a Taser against a misdemeanant who is not actively resisting arrest. *Id.* at 730.

A police officer's use of force is unconstitutional if, “judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest.” *Lester v. City of Chicago*, 830 F.2d 706, 713 (7th Cir.1987). In answering this question, the Seventh Circuit has remained cognizant of “the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.” *Graham,* 490 U.S. at 397, 109 S.Ct. 1865. As a result, the Seventh Circuit “give[s]

considerable leeway to law enforcement officers' assessments about the appropriate use of force in dangerous situations." *Baird v. Renbarger,* 576 F.3d 340, 344 (7th Cir.2009).

Qualified immunity, in effect, affords enhanced deference to officers' on-scene judgments about the level of necessary force. *See Saucier,* 533 U.S. at 204–05, 121 S.Ct. 2151. This is so because, even if the plaintiffs demonstrate that excessive force was used, they must further establish that it was objectively unreasonable for the officer to believe that the force was lawful—i.e., they must demonstrate that the right to be free from the particular use of force under the relevant circumstances was "clearly established." *See, e.g., al-Kidd,* 131 S.Ct. at 2080. A constitutional right is "clearly established" for qualified-immunity purposes where "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034; *see also United States v. Lanier,* 520 U.S. 259, 270, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997); *Estate of Escobedo v. Bender,* 600 F.3d 770, 779 (7th Cir.2010). "In other words, 'existing precedent must have placed the ... constitutional question beyond debate.' " *Reichle v. Howards,* —— U.S. ——, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (quoting *al-Kidd,* 131 S.Ct. at 2083). Prior to 2007, it was well-established in the Seventh Circuit that police officers could not use significant force on nonresisting or passively resisting suspects. *Abbott v. Sangamon County,* 705 F.3d 706, 732 (2013).[3]

---

[3] In *Abbott v. Sangamon County,* the Seventh Circuit has also held that it was clearly established in 2005 that officers could not repeatedly use an impact weapon to beat into submission a person who was not resisting or was merely passively resisting officers' orders. Additionally, since 2007, many of our sister circuits have found the use of a Taser against nonviolent, nonresisting misdemeanants to violate clearly established law, the absence of Taser case law notwithstanding.

The totality of the circumstances, when viewed in a light favorable to Ms. Skube, demonstrate that Deputy Koester's first application of the Taser could be determined by a jury to have been unreasonable. Ms. Skube was shot in dart mode, which caused her to lose control of her skeletal muscles, a very significant intrusion on her Fourth Amendment interests.[4] *See Bryan*, 630 F.3d at 826; *Lewis*, 581 F.3d at 475–76; *see also Cavanaugh v. Woods Cross City*, 625 F.3d 661, 665 (10th Cir.2010) (describing Taser fired in dart mode as a "quite severe" intrusion on Fourth Amendment interests). And none of the three *Graham* factors provide a justification for the first Tasing.

Assuming, *arguendo*, that Deputy Koester believed that he had probable cause to believe that Ms. Skube had obstructed a peace officer, a Class A misdemeanor, *see* 720 ILCS 5/31–1(a), it is not a serious or violent crime.[5] *See Cyrus*, 624 F.3d at 863 & n. 7 (criminal trespass, entry onto construction site, or resistance or obstruction of peace officer, were all misdemeanors under Wisconsin law and thus minor); *cf. Casey v. City of Fed. Heights*, 509 F.3d 1278, 1281 (10th Cir.2007) (lesser degree of force reasonable when offense is minor and not committed violently).

Moreover, disputed evidence exists that Ms. Skube posed no threat to Deputy Koester, Officer Leggitt, or anyone else. *See Cyrus*, 624 F.3d at 863; Exhibit A, Koester Deposition, pg. 327-328; Exhibit D, Leggitt Deposition, pg. 75; Exhibit B, Jost Deposition, pg. 177. After Ms.

---

*See Austin*, 690 F.3d at 498–99; *Shekleton*, 677 F.3d at 367; *Fils*, 647 F.3d at 1292; *Oliver*, 586 F.3d at 907–08; *Brown*, 574 F.3d at 499; *Casey*, 509 F.3d at 1286.

[4] There is an issue of disputed material fact in that Deputy Koester testified that he did not believe that the first Taser shooting was successful. Exhibit A, Koester Deposition, pg. 307-308.

[5] There is a dispute as to whether the Plaintiff threw a cigarette at Deputy Koester as she was in the vehicle. Exhibit A, Koester Deposition, pg. 247-248; Exhibit C, Skube Deposition, pg. 81.

Skube stopped in front of Deputy Koester, he placed the Taser down indicating that he did not consider her a threat. d/e 1, Exhibit 5, video at 12:07; Exhibit A, Koester Deposition, pg. 221. They then conversed about the lawfulness of Deputy Koester's search, and Ms. Skube backed away from Deputy Koester (as she was instructed to do). All the while, Officer Leggitt continued a conversation with Mr. Flagg as she did not consider Ms. Skube a threat to Deputy Koester. At the same time, Deputy Koester, who maintains that she was a threat, constantly moved toward Ms. Skube shrinking the reactionary gap.

Although she did not comply with Deputy Koester's orders to back up, turn around, and put her hands behind her back, she at most exhibited passive noncompliance and not active resistance. *See Phillips,* 678 F.3d at 527 ("Permitting substantial escalation of force in response to passive non-compliance would be incompatible with our excessive force doctrine and would likely bring more injured citizens before our courts."). Only a minimal amount of force may be used on such arrestees. *See Smith v. Ball State Univ., 295 F.3d 763, 766, 770 (7th Cir.2002) (*not excessive force for officers to use "straight arm bar" technique to remove nonresponsive driver from automobile, where, although driver was not actively resisting, officers reasonably believed him to be intoxicated and behind the wheel of a running vehicle).

Moreover, only a few minutes prior to Deputy Koester Tasing Ms. Skube, he and Officer Leggitt were able to successfully handcuff the much larger Mr. Flagg using control tactics. At no point in his interactions with Ms. Skube did Deputy Koester call for Officer Leggitt to assist him. Instead, he Tased her twice.

Finally, this is not a case of a "split-second judgments" as discussed in *Graham v. Connor*, 490 U.S. 386, 388, 397 (1989). The video shows approximately 14 seconds where

Deputy Koester spoke and conversed with Ms. Skube. He repeated the same order which was not a de-escalation technique. Exhibit B, Jost Deposition, pgs. 178-179. In fact, according to Thomas Jost, the appropriate time to Tase Ms. Skube (assuming there was one), would have been when she approached Deputy Koester. Exhibit B, Jost Deposition, pg. 180. However, after that moment dissipated, there was clearly no need for the use of the Taser. Exhibit B, Jost Deposition, pgs. 180-181. *Ellis v. Wynalda*, 999 F.2d 243, 247 (7th Cir.1993) ("When an officer faces a situation in which he could justifiably shoot, he does not retain the right to shoot at any time thereafter with impunity.").

**D. Deputy Koester is not entitled to Tory Immunity on Plaintiff's Assault and Battery Claim in Count XIV.**

"A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202. As is discussed in greater detail above, the facts demonstrate that Ms. Skube approached Deputy Koester and advised him that he had no right to search the vehicle. She was given less that one second to comply with Deputy Koester's instructions to back up. Subsequent thereto, Ms. Skube and Deputy Koester are engaged in a conversation and Deputy Koester shot her twice with his Taser.

As is clear on the video and through the record, Deputy Koester used excessive force against Ms. Skube. It is clear from his actions that he did not consider Ms. Skube a threat when he Tased her. Exhibit A, Koester Deposition, pg. 221. His conduct recklessly disregarded the Plaintiff's constitutional rights and demonstrated an utter indifference toward her safety. Furthermore, the fact that she was Tased again while on the ground is further evidence to support the willful and wanton nature of Deputy Koester's conduct. It is important to note that the second

Tasing occurred approximately 4 seconds later while Ms. Skube was on the ground. See: Exhibit A, Koester Deposition, Exhibit #100, Taser Firing Information; Exhibit A, Koester Deposition, pgs. 323-325. All reasonable inferences must be drawn in the non-movant's favor. *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003).

**E. The Plaintiff is entitled to Summary Judgment based upon Deputy Koester's illegal search of her purse.**

The Defendants argue that they are entitled as a matter of law to judgment on Counts V and VI. These counts allege an improper search of Ms. Skube's purse in violation of the Fourth Amendment to the United States Constitution.

On September 22, 2014, the Plaintiff filed a Motion for Partial Summary Judgment as to Count VI. The Plaintiff hereby incorporates the factual basis and legal arguments laid out in her Motion for Partial Summary Judgment as if they are fully laid out herein. See: d/e 108. The summary of that argument is that Deputy Koester recklessly disregarded Ms. Skube's rights by searching her purse under the guise of an "inventory search," knowing that she was entitled to her purse and, in fact, needed its contents to get home that night.

**F. Plaintiff is entitled to Compensatory Damages on Counts V and VI for the Illegal Search of the Plaintiff's Purse.**

In Counts V and VI for the search of her purse, Ms. Skube prays for an award of compensatory damages. In support of this, the Plaintiff submits that she has visited with, and been diagnosed by, Dr. Leslie J. Fyans who is a certified clinical psychiatrist in the State of Illinois. Dr. Fyans diagnosed Ms. Skube with dysthymia and PTSD. Exhibit E, Deposition of Dr. Leslie J. Fyans, Exhibit 4. To the extent that her diagnosis and any aggravation(s) of prior condition(s) were created or affected by Deputy Koester's search of her purse, is a question of

fact for the jury. See: Seventh Circuit Court of Appeals Pattern Jury Instruction 7.23. Clearly, if the jury finds that the Plaintiff has not proved damages related to the search of the purse by a preponderance of the evidence, the jury may award nominal damages. However, at this point, it is a factual question for the jury to resolve.

**PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff, Tamara Skube, respectfully requests this Honorable Court deny Defendants' Motion for Partial Summary Judgment; set the matter for jury trial; and for such further relief as this Court deems fair and just.

**Respectfully Submitted,**

**TAMARA SKUBE,**
Plaintiff,

BY: ____*/s Daniel A. Noll*_______
DANIEL A. NOLL
Reg. No. 6302658
Noll Law Office LLC
930 E. Monroe
Springfield, IL 62701
(217) 544-8441

**PROOF OF SERVICE**

I hereby certify that on October 17, 2014, I electronically filed the foregoing instrument, CERTIFICATE OF SERVICE, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Theresa M. Powell – tpowell@heylroyster.com

Joseph N. Rupcich – jrupcich@heylroyster.com

And I certify that I have mailed on July 31, 2014, by United States Postal Service the foregoing instrument, CERTIFICATE OF SERVICE, to the following non-CM/ECF participants:

Tamara Skube
2400 South Fourth Street
Springfield, IL 62703

/s/ Daniel A. Noll
DANIEL A. NOLL
Reg. No. 6302658
Noll Law Office
930 E. Monroe
Springfield, Illinois 62701
Telephone: (217) 544-8441
Fax: (217) 544-8775
E-mail: dannoll@noll-law.com