E-FILED
Thursday, 13 August, 2015  02:17:45 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **TAMARA SKUBE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 12-3185** |
| | ) | |
| **TRAVIS KOESTER, In His** | ) | |
| **Individual and Official Capacities** | ) | |
| **as Deputy of the Sangamon** | ) | |
| **County Sheriff's Office,** | ) | |
| **SANGAMON COUNTY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

On February 27, 2015, the Court issued an opinion giving notice to the parties under Federal Rule of Civil Procedure 56(f) that the Court was considering granting summary judgment in favor of the Plaintiff, Tamara Skube, on her excessive force and false arrest claims against the Defendant, Deputy Travis Koester, in his individual capacity. The Defendants were given an opportunity to submit additional briefing to the Court arguing why the Court

should not grant summary judgment in favor of the Plaintiff on these claims. The Defendants filed their brief on March 6, 2015, and the Plaintiff filed her reply on March 13, 2015. The Court now finds that no reasonable officer could believe he had probable cause to arrest Skube, so summary judgment is GRANTED in favor of Skube on her false arrest claim. As a result, the non-minimal force that Deputy Koester used in effecting that arrest was per se unreasonable, and summary judgment is GRANTED in favor of Skube on her excessive force claims.

## I. <u>BACKGROUND</u>

The questions currently before the Court are (1) whether a reasonable officer would have believed that he had probable cause to arrest Skube for obstructing or resisting arrest after she quickly walked toward him, stopped a few feet away, verbally objected to his actions, and did not comply with his orders for a period of 12 seconds; and (2) whether Deputy Koester acted reasonably in using a taser on dart mode against Skube twice to effect her arrest.

The factual background of this case was discussed in detail in the Court's February 27 opinion. The specific events relevant to

this opinion are as follows: Deputy Koester arrested Skube's

companion, Clifton Flagg, the night of July 21, 2011, after Flagg

refused to perform a field sobriety test.  Video, d/e 1-8 at 4:54-6:00.

Flagg questioned why Deputy Koester was stopping and arresting

him, but Flagg did not become belligerent at any point, nor did he

resist being placed under arrest.  See Vid. at 2:45-10:22.  After

Deputy Koester placed Flagg in Deputy Koester's squad car under

the supervision of another officer, Deputy Koester asked Skube to

exit the passenger's side of Flagg's SUV and stand next to the squad

car, which was parked a short distance behind the SUV.  Vid. at

11:42-11:52.  Deputy Koester then returned to the passenger's side

of Flagg's SUV, where Deputy Koester began looking through

Skube's purse.  Vid. at 11:54-12:07; Skube Dep., d/e 107-6 at 47.

   In response, Skube[1] quickly approached Deputy Koester,

exclaiming, "Hey, you have no right."  Vid. 12:08-12:09.  Deputy

Koester turned to face Skube, stating, "Back up now or you're

under arrest."  Vid. 12:10-12:12; Deputy Koester Dep., d/e 107-1 at

---

[1] The Court notes that Skube is a female who stands 5 feet 6 inches tall.  On the night of July 21, 2011, she was wearing shorts and a tank top and had done nothing disruptive or threatening prior to Deputy Koester searching her purse.

285.  Skube continued to object that Deputy Koester did not have the right to search the vehicle, to which Deputy Koester replied, "I'm not searching it, I'm inventorying it.  And if you don't do what I tell you right now you're going to be tased."  Vid. 12:12-12:15.  Skube continued to object, and Deputy Koester told her, "Turn around, you're under arrest."  Vid. 12:15-12:17.  Skube responded, "How am I under arrest?" and held her arms out to her sides in a questioning gesture, and Deputy Koester again told her, "Turn around and put your hands behind your back."  Vid. 12:18-12:22. Skube took a step back and began to repeat that Deputy Koester "had no right," and Deputy Koester repeated his order to "Turn around and put your hands behind your back."  Vid. 12:22-12:24.

At that point, Deputy Koester raised his taser and fired it in dart mode into Skube's abdomen.  Vid. 12:24-12:25.  Skube turned away, screaming, as Deputy Koester approached her while telling her, "Get on the ground."  Vid. 12:26-12:28.  Skube and Deputy Koester then went off-screen and were no longer visible, but the video captured the audio for the remainder of their interaction. Skube screamed while Deputy Koester told her, "Roll over and put

your hands behind your back or you're getting it again."  Vid.
12:31-12:34.  Skube began to say "all right," and then Deputy
Koester fired the taser again and Skube screamed.  Vid. 12:35.
Deputy Koester continued to yell at Skube to "Put your hands
behind your back," to which Skube screamed, "Okay, goddamn!"
Vid. 12:36-12:41.  Deputy Koester repeated that order, and Skube
yelled out something inaudible.  Vid. 12:42-12:46.  Skube can then
be heard sobbing and saying, "Oh, god."  Vid. 12:47-12:52.  Skube
cried that she "did not do anything," to which Deputy Koester
responded, "I gave you several lawful orders, and you didn't follow
any of them.  And then I told you 'turn around and put your hands
behind your back,' and you want to fight with us.  I'm not doing
that, okay?"  Vid. 12:55-13:06.  Deputy Koester then took Skube
into custody.  Sec. Am. Compl., d/e 69 at ¶ 71.

## II. <u>ANALYSIS</u>

Deputy Koester had probable cause to arrest Skube if the facts
and circumstances within Deputy Koester's knowledge and of which
he had reasonably trustworthy information were, objectively,
sufficient to warrant a prudent person in believing that Skube had

committed or was committing an offense.  See United States v. Sawyer, 224 F.3d 675, 678-79 (7th Cir. 2000).  Deputy Koester claims that he had probable cause to arrest Skube for the offense of resisting or obstructing a peace officer.  Under Illinois law, a person resists or obstructs a peace office if that person "knowingly resists or obstructs the performance by one known to the person to be a peace officer . . . of any authorized act within his or her official capacity."  720 ILCS 5/31-1.

Illinois courts have long held that the resisting/obstructing statute does not "proscribe mere argument with a policeman about the validity of an arrest or other police action."  People v. Raby, 240 N.E.2d 595, 599 (Ill. 1968).  Rather, the statute prohibits "only some physical act which imposes an obstacle which may impede, hinder, interrupt, prevent or delay the performance of the officer's duties, such as going limp, forcefully resisting arrest or physically aiding a third party to avoid arrest."  Id.  This means that a person "may inquire as to [the] reason [for an arrest]; he may point out the officer's mistake; he may protest and argue; but he may not impede the arrest by physical action."  People v. Crawford, 505 N.E.2d 394,

396 (Ill. App. Ct. 1987); see also People v. McCoy, 881 N.E.2d 621, 630 (Ill. App. Ct. 2008) ("The statute does not prohibit a person from verbally resisting or arguing with a police officer about the validity of an arrest or other police action.").

Under these rules, Illinois courts have overturned convictions for resisting or obstructing where defendants "simply refused to comply with the request of an officer," People v. Stoudt, 555 N.E.2d 825, 828 (Ill. App. Ct. 1990), or "merely argued with the officer as to when he would answer . . . questions and then, after an indefinite but certainly a brief time, did answer the questions," People v. Weathington, 411 N.E.2d 862, 863-64 (Ill. 1980).

Furthermore, the Seventh Circuit has held that a group of plaintiffs did not violate the resisting/obstructing statute by approaching police officers "while those officers were attempting to arrest another of the plaintiffs," "asking the officers what was going on," and later "question[ing] why they were being arrested." Gonzalez v. City of Elgin, 578 F.3d 526, 538 (7th Cir. 2009). In Gonzalez, police officers responded to reports of a fight in a restaurant parking lot. See id. at 530-36. When the officers

arrived, the fight had already ended and the people involved in the fight had dispersed, but the officers began forcefully arresting a group of people who remained in the area but had not been involved in the fight.  Id.  One of the plaintiffs told a police officer "I think you guys have the wrong people" and followed the officer while the officer was taking another of the plaintiffs into custody.  Id. at 531-32.  The plaintiff told the officer "we didn't do anything" and asked him why he was arresting them and where he was taking her friend. Id. at 532.  A video of the incident showed that this plaintiff followed the officer closely and was "visibly distressed."  Id.  Another plaintiff walked up to the police and "pleaded with them to stop" beating her husband, "saying, 'We didn't do anything. Leave him alone.'"  Id. at 535.  Both of these plaintiffs were arrested for resisting and obstructing an officer, though those charges were later dismissed.  Id. at 532, 535.

In reversing summary judgment against the plaintiffs' false arrest claims, the Seventh Circuit emphasized that "without more evidence, there is nothing wrong in itself with approaching a police officer."  Id. at 538.  The court stated that "'[i]t is well settled under

Illinois law . . . that the resistance must be physical; mere argument will not suffice.'" Id. (quoting Payne v. Pauley, 337 F.3d 767, 776 (7th Cir. 2003)).  Furthermore, the court cited Illinois precedent for the rule that using abusive language against officers does not constitute resisting or obstructing, and that "disrespect for the law, antagonism, or belligerence is insufficient to constitute resisting or obstructing a peace officer."  Id. (citing People v. Long, 738 N.E.2d 216, 222 (Ill. App. Ct. 2000); People v. Flannigan, 267 N.E.2d 739, 741-42 (Ill. App. Ct. 1971)).[2]

On the other hand, even brief periods of physical resistance can violate the statute.  In Brooks v. City of Aurora, Illinois, 653 F.3d 478 (7th Cir. 2011), the Seventh Circuit evaluated whether a

---

[2] Deputy Koester argues that the Court should disregard Gonzalez in light of a later Illinois Supreme Court case that held that "it is evident that 'obstruct' encompasses physical conduct that literally creates an obstacle, as well as conduct the effect of which impedes or hinders progress." People v. Baskerville, 963 N.E.2d 898, 903 (Ill. 2012).  However, by emphasizing that a physical act "is neither an essential element of nor the exclusive means of committing an obstruction," id. at 906, Baskerville marked a departure in Illinois case law away from Raby's holding that the terms "resist" and "obstruct" "are alike in that they imply some physical act or exertion," Raby, 240 N.E.2d at 599.  See Abbott v. Sangamon Cnty., Ill., 705 F.3d 706, 722 n.2 (7th Cir. 2013) (remarking upon this shift in law).  Because Baskerville was decided after the events of this case, it could not have affected Deputy Koester's decision to arrest Skube.  See id. ("We express no opinion on the import of [Baskerville] because it was decided almost five years after the conduct in this case occurred (and thus could not have been known by a reasonable person in [the arresting officer]'s position).").

plaintiff had violated the resisting statute when, having been informed that he was under arrest, the plaintiff "backpedaled away, escaped [the arresting officer]'s attempt to grab his wrist and raised his arms to his shoulders." Id. at 484. A video recorded from the arresting officer's dashboard camera also showed that the plaintiff "repeatedly, physically rebuffed [the arresting officer]'s attempts to grasp him and that, after he had stopped backtracking, [the plaintiff] turned to face [the officer] and threw out his arms in what could be construed as a resisting or defensive posture." Id. The Brooks court found that while this level of resistance may not have actually violated the statute—the state criminal charge for resisting arrest had been dismissed—the question was sufficiently close that the officer was entitled to qualified immunity against the plaintiff's false arrest claim. Id. Other courts have found that an arrestee is resisting if he physically struggles with officers for several minutes as the officers try to handcuff him, People v. Ostrowski, 914 N.E.2d 558, 572 (Ill. App. Ct. 2009), or if she runs towards a police car in what could reasonably be perceived as an effort to help her son escape from the car and disregards an officer's orders to stop,

Abbott, 705 F.3d at 723.  See also Raby, 240 N.E.2d at 599 (holding that "physically aiding a third party to avoid arrest" can constitute resisting or obstructing); but see City of Pekin v. Ross, 400 N.E.2d 992, 994 (Ill. App. Ct. 1980) ("[W]hen the officers attempted to handcuff Ross' hands behind his back he pulled his arms down and in front of him.  Ross testified that this happened because the officers were hurting him by putting his hands behind his back and pushing them up.  This certainly does not constitute resistance.").

Furthermore, prolonged refusals to comply with police orders can also constitute resistance or obstruction.  See People v. Synnott, 811 N.E.2d 236, 237-38, 241 (Ill. App. Ct. 2004) (finding that a defendant was guilty of obstruction after repeatedly refusing to exit his car during a DUI stop, necessitating a lengthy interaction with an officer in which the officer gave numerous orders to exit the car, twice returned to his squad car, and was required to request assistance from additional officers); Brickey v. Fitzgerald, No. 12-3202, 2013 WL 6152302, *7 (C.D. Ill. Nov. 22, 2013) (holding that an officer was entitled to qualified immunity against a plaintiff's false arrest claim when the plaintiff heatedly argued with the officer

and refused to follow the officer's orders for several minutes after the officer declared that the plaintiff was under arrest, requiring two additional officers to come to the scene to assist the arresting officer).  Such prolonged refusals to comply are especially likely to constitute obstruction when coupled with verbal threats against officers.  See People v. Gordon, 408 Ill. App. 3d 1009, 1016-17 (Ill. App. Ct. 2011) (finding that a defendant had violated the statute by repeatedly threatening police officers and refusing to comply with numerous orders to leave the scene of a traffic stop).

However, the law is clear—and had been for many years when the events giving rise to this case occurred in July 2011—that a short period of arguing and not complying with police orders does not constitute obstruction or resisting arrest.  See, e.g., Payne, 337 F.3d at 776 ("[T]he resistance must be physical; mere argument will not suffice."); Raby, 240 N.E.2d at 599 (holding that the statute does not "proscribe mere argument with a policeman about the validity of an arrest or other police action"); People v. Berardi, 948 N.E.2d 98, 103-04 (Ill. App. Ct. 2011) (finding that a person had not violated the statute when, "[a]lthough both parties repeated

themselves multiple times, the encounter lasted only a short time. Defendant told Taylor he had a right to be present and Taylor stated that he was not going to debate that question with defendant, and that defendant would be arrested if he did not leave."); McCoy, 881 N.E.2d at 630, 632 (emphasizing that "[t]he statute does not prohibit a person from verbally resisting or arguing with a police officer about the validity of an arrest," and reversing a conviction where the prosecutor had "suggested to the jury that mere argument or refusal to cooperate with a police officer is sufficient to support a finding of guilty"). The law was also clear that approaching an officer and objecting to his actions does not constitute obstruction. See Gonzalez, 578 F.3d at 538.

Similarly, because of the video, the relevant facts in this case are clear. Skube quickly approached Deputy Koester but stopped a few feet away from him and verbally disputed his actions. In other words, she attempted to "point out [Deputy Koester's] mistake"—granted, rather passionately and emotionally, but without the use of any "physical action." See Crawford, 505 N.E.2d at 396. Deputy Koester then gave his first command from 12:10 to 12:12 in the

video.  Vid. at 12:10-12:12.  Skube did not physically resist Deputy Koester's orders, as her only physical action was to take one step back when Deputy Koester declared that she was under arrest, in what appeared to be a surprised reaction to Deputy Koester's arrest order, while asking him with her arms raised out to her sides, "How am I under arrest?"  Vid. at 12:19-12:20.  Skube continued to object that Deputy Koester did not have the right to search her purse.  Vid. at 12:22-12:23.  Deputy Koester then tased Skube at 12:24.  Vid. at 12:24.

Skube's actions did not constitute resistance or obstruction. Skube did not "backpedal[] away" or "repeatedly, physically rebuff[] [Deputy Koester]'s attempts to grasp [her]," as the plaintiff in Brooks did.  See Brooks, 653 F.3d at 484.  Furthermore, Skube's period of argument—12 seconds, from the end of Deputy Koester's first order at 12:12 to his use of the taser at 12:24—was not nearly as prolonged as the resistance of the arrestees in Brickey and Synnott.  Skube also did not make verbal threats, as the arrestee in Gordon did.  Rather, Skube verbally objected to Deputy Koester's actions and argued for a period of several seconds, and she was not

given an opportunity for "eventual cooperation" before Deputy Koester tased her.  See Weathington, 411 N.E.2d at 864.  Under Gonzalez, Stoudt, and Weathington, Skube was permitted to approach Deputy Koester and object to what he was doing and she did not have to immediately comply with Deputy Koester's orders to back up.  In sum, Skube's twelve-second period of nonviolent objection was, as a matter of law, insufficient to give rise to probable cause for an arrest, and the law was clear on that point when the events of this case transpired on July 21, 2011. Therefore, summary judgment must be granted in favor of Skube on her unlawful arrest claim.

The Court notes that, ordinarily, the Court would prefer to send this question to a jury.  However, the relevant facts are all present on the video, and in the Court's February 27 opinion, the Court was required to apply the law to those facts to determine whether Deputy Koester was entitled to qualified immunity.  In finding that Deputy Koester is not entitled to qualified immunity, the Court has already decided the questions that would, if factual disputes existed, be decided by a jury.  That is, the Court analyzed

the video to determine that Deputy Koester is not entitled to

qualified immunity because no reasonable officer would believe he

had probable cause to arrest Skube, *which in turn* means that

Deputy Koester's arrest of Skube was unlawful.  A jury may be able

to find that Deputy Koester genuinely believed that Skube was

obstructing his inventory search or resisting arrest, but such a

finding would not change the fact that Skube's actions portrayed in

the video—several seconds of arguing with Deputy Koester about

why he was searching her purse and the grounds for declaring that

she was under arrest—are, objectively and as a matter of law, the

sorts of actions that <u>Raby</u> and its progeny held do not violate the

resisting/obstructing statute.  Therefore, no questions remain for a

jury to resolve; the Court is simply making a legal determination

that, given the state of the law in July 2011, no reasonable officer

would have believed that he had probable cause to arrest Skube for

resisting arrest.  <u>See</u> <u>Abbott</u>, 705 F.3d at 714 ("Usually in a § 1983

false-arrest case the jury determines whether the arrest was

supported by probable cause; but if the underlying facts are

undisputed, the court can make that decision on summary

judgment.").

Furthermore, because Deputy Koester did not have probable cause to arrest Skube, the non-minimal force used by Deputy Koester in effecting that arrest was unreasonable.  The Seventh Circuit has held that "when an illegal arrest sets off a chain of indignities inflicted on the hapless victim, including offensive physical touchings that would be privileged if the arrest were lawful, she is entitled to obtain damages for these indignities whether or not they are independent violations of the Constitution."  Herzog v. Vill. of Winnetka, Ill., 309 F.3d 1041, 1044 (7th Cir. 2002); see also Williams v. Sirmons, 307 F. App'x 354, 360 (11th Cir. 2009) ("If no probable cause authorizes an arrest, *any* use of force to effectuate the unlawful arrest is a violation of the Fourth Amendment."). Because the Court finds that the arrest was unlawful, Skube is entitled to obtain damages for Deputy Koester's use of the taser, regardless of whether or not the tasings would have been excessive had Deputy Koester had probable cause to arrest Skube.  Therefore, the Court also grants summary judgment in favor of Skube on her excessive force claims.

### III.  **CONCLUSION**

For those reasons, summary judgment is GRANTED in favor of the Plaintiff on her false arrest claim against Deputy Koester in his individual capacity (Count VIII) and two excessive force claims against Deputy Koester in his individual capacity (Counts II and IV). This case will now proceed to trial on the Plaintiff's assault and battery claim against Deputy Koester in his official capacity (Count XIII) and on the issue of damages on the Plaintiff's false arrest and excessive force claims.  A telephonic status conference is hereby scheduled for Wednesday, August 19, 2015, at 11:00 AM.  The Court will place the call.  The Court will schedule final pretrial conference and trial dates at the status conference.

ENTER: August 11, 2015.

s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE